**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| |
|---|
| MARILYN TALAVERA-IBARRONDO, *et al.*, |
| **Plaintiffs,** |
| **v.** |
| MUNICIPALITY OF SAN SEBASTIAN, *et al.*, |
| **Defendants.** |

Civil No. 09-1942 (FAB)

**OPINION AND ORDER[1]**

BESOSA, District Judge

Plaintiffs Marilyn Talavera-Ibarrondo ("Talavera") and Esperanza Rosa-Jimenez ("Rosa") (collectively, "plaintiffs") bring this action against the Municipality of San Sebastian ("Municipality"), Luis Gonzalez-Ruiz ("Gonzalez"), Randy Rodriguez-Cardona ("Rodriguez"), Zoraida Vera-Nunez ("Vera"), and Daniel Cabrero-Nunez ("Cabrero") (collectively, "defendants") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and P.R. Laws Ann. Tit. 29, §§ 155 ("Law 17") and 1321 ("Law 69"), alleging sexual harassment and retaliation.[2] (Docket No. 1.) Plaintiffs invoke the Court's

---

[1] Hiram M. Angueira, a second-year student at the University of Puerto Rico Law School, assisted in the preparation of this opinion.

[2] Plaintiffs' sexual discrimination claims pursuant to 42 U.S.C. § 1981 ("Equal rights under the law") and P.R. Laws Ann. Tit. 29 § 146 ("Law 100") were previously dismissed. See (Docket No. 47.)

supplemental jurisdiction over claims arising under the laws of the Commonwealth of Puerto Rico.  See 28 U.S.C. § 1367.

Pending before the Court are plaintiffs' and defendants' cross-motions for summary judgment.  (Docket Nos. 51 and 53.)  For the reasons set forth below, plaintiffs' motion for summary judgment is **DENIED** and defendants' motion for summary judgment is also **DENIED**.

**PROCEDURAL HISTORY**

On September 26, 2009, plaintiffs filed a complaint alleging sexual harassment, sex discrimination and retaliation pursuant to 42 U.S.C. §§ 1981 and 2000e, and Puerto Rico Laws 17, 69, and 100. (Docket No. 1.)  On November 23, 2011, the Municipality answered the complaint.  (Docket No. 11.)  On the same date, the Municipality filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), claiming that there were no valid federal claims against the individual defendants because Title VII does not recognize individual liability.  (Docket No. 12.)  The Court granted the motion only with regard to causes of action alleged against the individual defendants pursuant to federal law, stating that "[t]he Federal claim against the Municipality permits the Court to exercise its Supplemental Jurisdiction over plaintiffs' state law claims against the individual defendants."  (Docket No. 17.)  On January 4, 2010, defendants Vera, Cabrero and Gonzalez filed their answer to the complaint.  (Docket No. 24.)  On February 28, 2010, the

Municipality and Vera, Cabrero and Gonzalez filed a motion for
joinder. (Docket No. 31.) The Court granted the motion. (Docket
No. 32.) On April 2, 2010, the Municipality, Vera, Cabrero and
Gonzalez filed a motion requesting dismissal of claims pursuant to
42 U.S.C. § 1981 and Law 100. (Docket No. 36.) Plaintiffs, in
turn, filed a response requesting partial dismissal of their
claims. (Docket No. 37.) The Court granted plaintiffs' motion.
(Docket No. 47.) On July 29, 2010, defendant Rodriguez filed his
answer to the complaint. (Docket No. 46.) On November 22, 2010,
plaintiffs filed a motion for summary judgment and a statement of
undisputed material facts. (Docket Nos. 50 and 51.) On the same
date, the Municipality, Vera, Cabrero and Gonzalez also filed a
motion for summary judgment. (Docket No. 53.) On December 9,
2010, plaintiffs opposed defendants' motion. (Docket No. 61.) On
December 16, 2010, the Municipality, Vera, Cabrero and Gonzalez
filed their opposition to plaintiffs' motion for summary judgment.
(Docket No. 62.) On February 22, 2010, defendant Rodriguez filed
a motion for joinder of the proposed pre-trial order. (Docket
No. 77.) The Court granted the motion. (Docket No. 78.) On
February 24, 2010, the parties were ordered to inform the Court
whether the issue of liability, based on their motions for summary
judgment, could be determined by the Court. (Docket No. 83.) Based
on the parties' responses, the Court determined that it would
decide the issue of liability. (Docket No. 90.) Lastly, on
March 8, 2011, Rodriguez filed two motions to join the other

defendants' response in opposition to plaintiffs' summary judgment and their motion for summary judgment. (Docket Nos. 92 and 93.) The Court granted both motions.  (Docket Nos. 94 and 95.)

## I.   UNDISPUTED FACTS

The Municipality of San Sebastian hired plaintiffs Rosa and Talavera during November 2007 and January 2008, respectively, as promoters for the Municipality's special program "Puerto Rico en Forma" ("PRF").  (Docket Nos. 50 at 2, 62-1 at 2.)  PRF was a Commonwealth Government program managed locally by the Municipality's Recreation and Sports Department. (Docket Nos. 53-2 at 2, 61-1 at 2.)  Its objective was to help overweight people improve their level of fitness.  Id.

Defendant Rodriguez served as the Program's Coordinator. (Docket Nos. 50 at 5, 62-1 at 3.)  He reported to defendant Cabrero, who was the Director of PRF and of the Municipality's Sports and Recreation Department.  (Docket Nos. 50 at 6, 62-1 at 4.)  Defendant Gonzalez was the Municipality's Deputy Mayor and defendant Vera was its Human Resources Director.  Id.

The Municipality has a written sexual harassment policy. (Docket No. 63-12.)  In February, 2008, plaintiffs met with Deputy Mayor Gonzalez to discuss certain concerns they had about their work environment.  (Docket Nos. 55-10 at 16-17, 53-6 at 12).  As a result, Gonzalez held a meeting in which defendants and plaintiffs discussed, among other things, Rodriguez's vulgar behavior in the workplace.  (Docket Nos. 53-2 at 33 & 35, 61-1 at 8.)  Both parties

agree that Rodriguez would engage in public flatulence and would describe his bodily waste after using the bathroom. (Docket Nos. 55-11 at 2, 53-6 at 16-17.) Vera considered Rodriguez's behavior improper. (Docket No. 53-6 at 21.)

On March 11, 2008, plaintiffs sent a letter to Mayor Javier Jimenez ("Mayor Jimenez") requesting an urgent meeting to discuss the PRF program and a situation with Rodriguez. (Docket No. 55-2.) On October 8, 2008, plaintiffs sent Mayor Jimenez a second request to meet to discuss an urgent situation with PRF and Rodriguez that affected them emotionally and professionally. (Docket No. 55-3.)

In December of 2008, the PRF program was discontinued due to lack of funding. (Docket Nos. 61-1 at 13, 53-5 at 2.) All employees hired specifically for PRF, including plaintiffs and Rodriguez, were terminated. (Docket Nos. 61-1 at 13, 53-5 at 2, 53-22 at 1, 53-21 at 6-7.) In January of 2009, plaintiffs met with Vera to discuss Rodriguez's pattern of sexual harassment. (Docket Nos. 55-16 at 13, 55-17 at 14, 62-1 at 20.) Vera testified that the conversation with Rosa regarding Rodriguez's behavior in 2009 was about "a similar conduct to the one that we have already talked about." (Docket No. 55-13 at 18.) At this meeting, Vera asked plaintiffs to submit a written complaint. (Docket Nos. 55-16 at 13, 55-17 at 14, 53-2 at 8.)

After Rosa filed her complaint, the Municipality hired RSP & Associates, a third party law firm, to conduct an investigation. (Docket Nos. 55-14 at 3-4, 62-1 at 20.) The firm assigned attorney

Rafael Garcia-Ortega ("Garcia") to examine Rosa's complaint and Vera's accompanying statement. (Docket Nos. 55-14 at 3-4 & 8-9, 62-1 at 20.) As part of the investigation, Garcia interviewed Rosa, Talavera, Cabrero and Rodriguez. (Docket Nos. 55-14 at 12-18, 62-1 at 21.) On March 6, 2009, Garcia prepared administrative findings. (Docket No. 55-4.) Among the findings, Garcia indicated that "[Rosa's] testimony was credible by demeanor, behavior, and by fidelity . . ." and that "[Rodriguez's] testimony deserved minimal credibility . . . ." (Docket No. 55-4 at 5.)

The findings specifically concluded that: "defendant Randy Rodriguez-Cardona incurred into (sic) sexual harassment behavior at work against complainant Esperanza Rosa Jimenez, as defined in Article 4, sub-section 8 of the Municipal Sexual Harassment Regulations for San Sebastian." (Docket No. 55-4 at 9.) The ruling recommended that "the Human Resources Director issue a written admonishment to defendant Randy Rodriguez Cardona . . ." Id. This ruling was discussed with Gonzalez and Mayor Jimenez. (Docket Nos. 55-12 at 4-5, 62-1 at 22.) On April 27, 2009, Vera informed Talavera that the written admonishment would become part of Rodriguez's file. (Docket No. 55-7.)

## II. SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Under the summary judgment standard, the Court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. The Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable references, and unsupported speculation." Forestier Fradera v. Municipality of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006).

Cross-motions for summary judgment do not alter the summary judgment standard, but rather require the trial court to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. See Adria Int'l. Group, Inc. v. Ferre Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001); Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996). In deciding cross-motions for summary judgment, trial courts must consider each motion separately, drawing inferences against each movant in turn. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

## III. DISCUSSION

### A.   Sexual Harassment Claim

Title VII provides protection to employees against situations where "sexual harassment is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (citations, internal quotation marks and brackets omitted); Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986). To prevail in a hostile work environment claim, the plaintiff must prove the following six elements:

> (1) that she . . . is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001). The first five elements are composed of five overlapping questions that, taken together, are designed to prove that the plaintiff was subjected to a hostile work environment.  The last element is designed to prove that there is a basis for employer liability.

### i.   Hostile Work Environment

There is no specific test used to determine whether a plaintiff has been subjected to a severe or pervasive hostile work environment; rather, a court must examine the totality of the circumstances. <u>Faragher</u>, 524 U.S at 787.  The factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Marrero v. Goya de P.R., Inc.</u>, 304 F.3d 7, 18-19 (1st Cir. 2002) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)).  Evidence of sexual remarks and innuendos, ridicule and intimidation, and disgusting comments can constitute a hostile work environment. <u>See</u> <u>id</u>. at 19.  Similarly, uninvited sexual advances or requests for sexual favors can comprise a hostile work environment. <u>Gorski v. New Hampshire Dep't. of Corrections</u>, 290 F.3d 466, 472 (1st Cir. 2002). Plaintiffs, members of a protected class as women, narrate a litany of comments and events illustrating unwelcome sexual harassment. These comments commenced at the start of their working relationship with Rodriguez.  Plaintiffs both allege that Rodriguez repeatedly commented on their physical appearance, telling Talavera that "there must be positions in which [you must] . . . look very well with [that] tattoo on" and telling Rosa that that she had a "boob mess" and a "flat behind"; routinely described his extramarital affairs in front of plaintiffs; made sexist declarations about

"what women are good for"; made vulgar suggestions about the intimate relations between plaintiffs and their husbands; and showed plaintiffs pictures of naked men and women.[3]

In response to plaintiffs' allegations, defendants send the Court down a long-winded path to a denial.  See (Docket No. 62-1 at 6, 8-11, 13-14).  First, defendants question the severity and pervasiveness of the alleged harassment presented in

---

[3] The following is a non-exhaustive list of allegations by plaintiffs: (1) on her first day of work Rodriguez told Talavera "at least you are young and pretty, not like Rosa, that old woman that is worthless."  (Docket Nos. 55-10 at 5, 55-17 at 9); (2) Rodriguez routinely described his extra marital affairs in front of plaintiffs stating:  "I turned her inside out like a sock," and "I screwed her."  (Docket Nos. 55-10 at 14-15, 55-16 at 10, 55-17 at 10); (3) Rodriguez would order plaintiffs to "go clean the bathrooms cause that is what women are good for, cleaning, cooking, having children and having sex, since women are all horny."  (Docket Nos. 55-10 at 11, 55-16 at 10, 55-17 at 10); (4) Rodriguez would tell Rosa that she had a "boob mess" and a "flat behind" and that she should "cut part of [her] tits and put them in [her behind]."  (Docket No. 55-16 at 10); (5) Rodriguez would tell Rosa that she had "such a mess in [her] boobs that not even Rin Tin Tin could go around them."  (Docket Nos. 55-10 at 12, 55-16 at 10-11); (6) Rodriguez would also tell Rosa:  "I don't know how your husband can have sex with you," "I cannot believe the Municipality sent me such an ugly woman like you to work in this program," "why are you not as young and attractive as your coworker Talavera," and "here is your paycheck so you could pay your husband to have sex with you."  (Docket Nos. 55-10 at 13, 55-16 at 11, 55-17 at 11); (7) Rodriguez would ask Talavera:  "how frequently do you have sex with your husband?", "which sexual positions do you prefer?" "where does that tattoo end?," and "there must be positions in which [you must] . . . look very well with [that] tattoo on" (Docket Nos. 55-10 at 11, 55-17 at 12); (8) Rodriguez would frequently show plaintiffs pictures of naked men and tell them "this is what you need, a man with such a big hard on . . . that is the size you [would] like your husband to have because that is what women like."  (Docket No. 55-10 at 14, 55-16 at 11); and (8) Rodriguez would also show plaintiffs pictures of naked women exposing their private parts and comment "look how fine she looks." Id.

the internal complaints filed by plaintiffs with the Municipality, and question whether the alleged actions narrated in those complaints created a hostile working environment. (Docket No. 62 at 11). Defendants characterize Rodriguez's behavior as merely "childish conduct" and allege that plaintiffs engaged in similar behavior by calling Rodriguez "Panda Bear," "fatso," and passing gas in public. (Docket No. 53-4 at 3.) Defendants state that Rodriguez's childish behavior was discussed at the PRF meeting in February 2008, and that he was verbally reprimanded. (Docket No. 53-6 at 18.)

        While there is no "mathematically precise test" used to determine whether plaintiffs have presented sufficient evidence to constitute a hostile work environment, they must show that the conduct was severe and pervasive enough to create an objectively hostile or abusive work environment and that the plaintiffs subjectively perceived the environment to be abusive. See Harris, 510 U.S. at 21-22. Plaintiffs provide testimony alleging that over a year they endured unwelcome, sexually objectionable comments, gestures and vulgarities that were both objectively and subjectively offensive, and which altered the conditions of their employment. See Faragher, 524 U.S. at 780 (explaining that defendants "created a sexually hostile atmosphere . . . by repeatedly subjecting [plaintiff] and other female lifeguards to uninvited and offensive touching, by making lewd remarks, and by speaking of women in offensive terms.") (internal quotes omitted.)

Defendants present sworn statements from co-employee Jesus Gonzalez and Program Director Cabrero in which they state that they "never observed or heard Randy Rodriguez make comments that could be interpreted as sexual in nature or denigrating women [and] . . . [they] never saw him show sexual or improper videos towards these two ladies."[4]  (Docket Nos. 53-22 at 2, 53-4 at 3.)  By making these assertions, defendants have created a dispute of material facts as to whether or not plaintiffs were, in fact, subjected to the alleged harassment by defendant Rodriguez.  The Court finds that an analysis of the totality of circumstances described by plaintiffs could convince a reasonable jury that the conduct complained of was "severe and pervasive" enough to constitute a hostile work environment sufficient to defeat defendants' motion for summary judgment.  The ultimate determination of this issue, however, requires credibility determinations that must be resolved by a jury at trial and not by this Court at summary judgment.  See Anderson, 477 U.S. at 255 (explaining "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); Simas v. First Citizens' Federal Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) (noting "credibility determinations are for the factfinder at trial, not for the court at summary judgment").

---

[4] Both documents are phrased identically.

### ii. Employer Liability

The last element necessary in establishing a hostile work environment claim is whether there is a basis for employer liability. <u>O'Rourke</u>, 235 F.3d at 728. The answer to this question depends on whether the alleged harasser was a co-worker or a supervisor. <u>Crowley v. L.L. Bean, Inc.</u>, 303 F.3d 387, 401 (1st Cir. 2002). The Equal Employment Opportunity Commission ("EEOC") enforcement guidelines dictate that "[a]n individual qualifies as an employee's 'supervisor' if: (a) the individual has authority to undertake or recommend tangible employment decisions affecting the employee; or (b) [t]he individual has authority to direct the employee's daily work activities." <u>Mack v. Otis Elevator Co.</u>, 326 F.3d 116, 127 (2nd Cir. 2003). (citing the EEOC Enforcement Guidance on Vicarious Employer Liability for Unlawful Harassment by Supervisors, 8 FEP Manual (BNA) 405:7654 (1999)).

In this case, Rodriguez, by his own admission, served as plaintiffs' direct supervisor. (Docket No. 61-3 at 6). Although he did not have the authority to recommend tangible employment actions, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits,"[5] he did control Talavera's and Rosa's daily work schedule, evaluated their job performance and even reprimanded them. (Docket Nos. 61-3 at 6-7,

---

[5] <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 761, (1998).

63-18).  The rest of the defendants, however, deny that Rodriguez

had any such power.  (Docket No. 53-1 at 5.)  This Court will

disregard this posterior unjustified retraction.  As the First

Circuit Court of Appeals has explained:

> where a party has given 'clear answers to unambiguous
> questions' in discovery, that party cannot 'create a
> conflict and resist summary judgment with an affidavit
> that is clearly contradictory,' unless there is a
> 'satisfactory explanation of why the testimony [has]
> changed.'  [I]f prior statements under oath could be
> disavowed at will after a motion is made, the other side
> would be faced with a constantly moving target and
> summary dispositions made almost impossible.

Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49 (1st

Cir. 2000) (citations omitted).  The Court will therefore analyze

the alleged harassment as if perpetrated by a supervisor.

Defendants assert that, even if they were to admit

that plaintiffs suffered sexual harassment, there is no basis for

employer liability.  An employer is subject to vicarious liability

when a plaintiff alleges that a supervisor created a hostile work

environment unless the employer can satisfy the elements of an

affirmative defense.  Under the Faragher/Ellerth defense, an

employer must prove, by a preponderance of the evidence, "(a) that

the employer exercised reasonable care to prevent and correct

promptly any sexually harassing behavior, and (b) that the

plaintiff employee unreasonably failed to take advantage of any

preventive or corrective opportunities provided by the employer or

to avoid harm otherwise."  Reed v. MBNA Marketing Systems, Inc.,
333 F.3d 27, 32 (1st Cir. 2003).

          To meet the first part of their defense, defendants
aver that they exercised reasonable care to prevent sexual
harassment by creating and disseminating a sexual harassment
policy.  They also present a series of documents signed by
plaintiffs that presumably demonstrate that plaintiffs were made
aware and briefed on the sexual harassment policy's details.
(Docket Nos. 63-2 at 2, 63-6 at 2, 63-9, 63-4, 63-5).  Plaintiffs,
however, allege that they did not receive any briefing as part of
their hiring process.  (Docket Nos. 55-10 at 2-3, 55-9 at 3).
Rodriguez even admitted that the Municipality never provided a
formal orientation about sexual harassment in the workplace to him,
plaintiffs, or Cabrero.  (Docket No. 61-3 at 10.)  The rest of the
defendants, however, contradicted Rodriguez's statement by
asserting that every employee is provided the formal orientation.
(Docket Nos. 53-6 at 26-27, 53-21 at 8.)  Defendant fails to
satisfy the first prong of the defense because there exists a
genuine issue of material fact as to whether defendant maintained
a "substantial antiharassment program" in place.  Cf. Reed, 333
F.3d at 35 (finding that defendant had satisfied the first prong of
the defense where plaintiff could not show that defendant "lacked
a substantial antiharassment program".)  (Docket No. 63-12.)

          To support the second prong of their defense,
defendants allege that plaintiffs did not make the Municipality

aware of the harassment until after the end of their employment.
(Docket No. 62-1 at 6, 8-11, 13-14.)  Plaintiffs allege, however,
that they presented their complaints to Rodriguez, Cabrero, Vera
and Gonzalez many times throughout their employment, beginning as
early as January of 2008.  First, plaintiff Talavera alleges that
in January 2008, during the first month of her employment, she told
Cabrera she felt uncomfortable with Rodriguez's behavior and asked
that he intercede on her behalf.  (Docket Nos. 55-10 at 17-18,
55-17 at 11.)  Defendants deny the substantive content of this
statement and state that the allegations were never brought to the
Municipality during plaintiffs' employment.  (Docket No. 62-1
at 11.)  Second, plaintiffs allege that during February 2008, they
met with Deputy Mayor Gonzalez to discuss Rodriguez's sexual
harassment and the fact that Cabrero had not addressed the issue.
(Docket Nos. 55-10 at 17-18, 55-16 at 11-12, 55-17 at 12-13.)
Defendants admit that Deputy Mayor Gonzalez met with the plaintiffs
but deny that sexual harassment was discussed.  (Docket Nos. 53-6
at 12-14, 62-1 at 12.)  Third, plaintiffs claim that Deputy Mayor
Gonzalez and Human Resources Director Vera held a meeting in
February 2008 with all PRF personnel in which plaintiffs described
Rodriguez's pattern of sexual harassment.  (Docket Nos. 55-16
at 12, 55-17 at 13.)  Defendants admit that a meeting occurred, and
that the "vulgar" and "childish" behavior of Rodriguez was
addressed and that Rodriguez admitted to it, but that sexual
harassment was never discussed.  (Docket Nos. 53-6 at 12-22, 62-1

at 12-13.)  Fourth, plaintiffs allege that they verbally notified
Vera on at least four occasions about Rodriguez's sexual harassment
pattern between the months of March and December 2008.  (Docket
Nos. 55-11 at 23, 55-16 at 13, 55-17 at 14.)  Defendants also deny
this claim, and maintain that plaintiffs should have filed a
written complaint to the Director of Human Resources about the
alleged harassment, as required by the Municipality's sexual
harassment policy.  (Docket No. 62-1 at 18-19.)  Finally,
plaintiffs state that they addressed two letters to Mayor Jimenez
requesting an urgent meeting to discuss their situation within PRF.
(Docket Nos. 55-2, 55-3).  Defendants do not dispute that plaintiffs
sent letters to the Mayor, but aver that no mention of a hostile
work environment or sexual harassment was made in the letters.
(Docket No. 62-1 at 19.)[6]

       Given the contradictory nature of the testimony
offered by the parties, the Court finds that there are genuine
issues of material fact that require credibility determinations

---

       [6] Defendants filed a motion asking this Court to take notice
of a recent First Circuit Court of Appeals case, Wilson v. Moulison
North Corp., 639 F.3d 1 (1st Cir. 2011), in support of their
argument against employer liability.  The case, however, is
inapposite.  Unlike the situation in Wilson, here there remains a
genuine issue of material fact as to whether plaintiffs notified
defendants about the alleged continuing harassment after the
initial meeting in February of 2008.  While it is true that a
"plaintiff's failure to put the defendant on notice of the renewed
harassment is fatal to this claim of employer liability" (Docket
No. 96 at 4 (quoting Wilson)), this is a contested issue in this
case, making summary judgment for defendant on the issue of
employee liability improper.

regarding the question of employer liability.  These determinations render summary judgment improper on this claim.  See Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("[a]t the summary judgment stage . . . the court should not engage in credibility assessments").

### iii. Conclusion

Based on the above, the Court **DENIES** plaintiffs' and defendants' motions for summary judgment as to the sexual harassment claim.  There are issues of material fact as to (1) whether or not the alleged conduct created a hostile work environment, and (2) whether there is a basis established as to employer liability.

### B.   Retaliation under Title VII

In addition to their claim for sexual harassment, plaintiffs allege that Rodriguez retaliated against them after they verbally complained about Rodriguez's behavior to the Deputy Mayor and the Human Resources Director.  (Docket Nos. 55-11 at 8-9, 55-16 at 12-13, 55-17 at 13-14.)  Because of Rodriguez's retaliatory behavior, plaintiffs filed a retaliation complaint under Title VII.

Title VII's anti-retaliation provision forbids discrimination against employees because they have opposed practices that are unlawful under Title VII.  42 U.S.C. § 2000e-3. To prevail on a retaliation claim, plaintiffs must prove three elements: (1) "[they] engaged in protected activity; (2) [they] suffered some materially adverse action; and (3) the adverse action

was causally linked to [the] protected activity." <u>Dixon v. Int'l.
Bhd. of Police Officers</u>, 504 F.3d 73, 81 (1st Cir. 2007).   The
First Circuit Court of Appeals has explained that a materially
adverse action "must be one that 'could well dissuade a reasonable
worker from making or supporting a charge of discrimination,'
whether or not the harm occurs in the workplace." <u>Id</u>.

        Plaintiffs allege that they engaged in protected conduct
by verbally complaining about Rodriguez's pattern of sexual
harassment during a February 2008 meeting.   (Docket No. 51
at 20-21.)   Protected activity "may be an informal or formal
complaint about . . . an employer's practice or act . . . ."
<u>Jeseritz v. Potter</u>, 282 F.3d 542, 548 (8th Cir. 2002).  Defendants
assert, however, that the meeting's purpose was to discuss the
development of the PRF program, and that while Rodriguez's vulgar
behavior was addressed, sexual harassment was not discussed at any
time.   (Docket No. 53-6 at 12-22.)   Plaintiffs assert that
Rodriguez took the following retaliatory actions against them
starting immediately after the meeting:   (1) Rodriguez told them
that "[t]his is it, now you're going to really be screwed, because
you're gossips [sic]" (Docket Nos. 55-11 at 9); (2) Rodriguez also
stated that "now you are going to see what I am capable of . . .
now that you came after me, I am going to go after you" and "you
are all conspiring against me" (Docket Nos. 55-16 at 12, 55-17
at 13); (3) Rodriguez changed Rosa's work schedule on several
occasions from 8:00 a.m. to 4:30 p.m. to 12:00 noon to 8:30 p.m. so

that she "would not conspire against him" (Docket Nos. 55-11 at 8-9, 55-16 at 12-13); and (4) after plaintiffs were done with their assigned tasks, Rodriguez would order them to walk around the public park and do push-ups while he watched.  (Docket Nos. 55-16 at 12-13, 55-17 at 13-14.)  Defendants deny these claims, asserting that plaintiffs never complained of these allegations while employed with the Municipality.  (Docket No. 62-1 at 15-16.)

Rodriguez's conduct, if proven, may qualify as a "materially adverse action"; the conduct would dissuade a reasonable employee from making or supporting a charge of discrimination.  Yet, given defendants' denials that plaintiffs engaged in protected conduct and that they suffered materially adverse actions, there are genuine issues of material fact to be determined.  Consequently, the determination of whether plaintiffs suffered retaliation will require a credibility judgment.  The Court cannot engage in such assessment at the summary judgment stage.  See Anderson, 477 U.S. at 255 (explaining "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); Simas, 170 F.3d at 49 (noting "credibility determinations are for the factfinder at trial, not for the court at summary judgment").

Based on the above, this Court **DENIES** plaintiffs' and defendants' motions for summary judgment as to the retaliation claim.  There are issues of material fact as to (1) whether or not

plaintiffs engaged in a protected activity and (2) whether they suffered a materially adverse action.

### C.   Local Law Claims

Lastly, plaintiffs invoke this Court's supplemental jurisdiction over claims arising under the laws of the Commonwealth of Puerto Rico.  See 28 U.S.C. § 1367.  Plaintiffs assert two causes of action under Laws 17 and 69, alleging a hostile work environment.

Laws 17 and 69, together with Law 100, (Puerto Rico's general antidiscrimination statute) form "a single legislative scheme to further the public policy against gender discrimination." Suarez Ruiz v. Figueroa Colon, 145 P.R.Dec. 142, 148-49 (1998). Each of these laws serves "virtually identical purposes and outlaw[s] virtually identical behaviors." Figueroa Garcia v. Lilly Del Caribe, Inc., 490 F.Supp.2d 193, 212 (D.P.R. 2007).  Among other things, Laws 17 and 69 individually and specifically proscribe sexual harassment in the form of a hostile work environment. See Suarez Ruiz, 145 P.R. Dec. at 148-49 (explaining that Law 17 and Law 69 provide more specific prohibitions of acts already proscribed by Law 100); Miro Martinez v. Blanco Velez Store, Inc., 393 F.Supp.2d 108, 114 (D.P.R. 2005) (discussing relationship between Law 17, Law 69, and Law 100).

Puerto Rico's laws against sex-based discrimination share essentially the same substantive content as Title VII and its precedents.  Hernandez-Loring, 233 F.3d at 56.  Law 17, for

example, essentially "tracks the language of the EEOC guidelines regarding hostile work environment claims. <u>Rojas v. BMJ Foods, Inc.</u>, No. 09-1593, 2011 WL 693621, at *11 (D.P.R. Feb. 24, 2011). Law 69, similarly to Title VII, declares that it is unlawful for an employer "to dismiss or discriminate against any employee or participant who files a complaint or charge, or is opposed to discriminatory practices, or participates in an investigation or suit for discriminatory practices against the employer." P.R. Laws Ann. tit. 29 § 1340; <u>Santiago Rivera v. Johnson & Johnson</u>, 436 F.Supp.2d 316, 326 (D.P.R. 2006).

Given the similarities between Title VII and Laws 17 and 69, plaintiffs' claims under those Commonwealth laws are deemed dependent on the same legal theories as their Title VII claims. To the extent that plaintiffs' Title VII claims require credibility determinations that cannot be made by the Court at summary judgment, the same holds true for plaintiffs' Commonwealth law claims. Accordingly, the Court **DENIES** both plaintiffs' and defendants' cross-motions for summary judgment as to the Commonwealth law claims.

## IV.  CONCLUSION

Accordingly, the Court **DENIES** plaintiffs' motion for summary judgment and **DENIES** defendants' motion for summary judgment. The disputed issues are remitted for trial.

The parties will file an amended proposed joint pretrial order, which will include only those claims still remaining in the

Civil No. 09-1942 (FAB)                                         23

case, on **September 1, 2011.**  (<u>See</u> Docket Nos. 17 and 47.)  A Final

Pretrial Conference will be held on **September 8, 2011 at 9:00 a.m.,**

and the Jury Trial will commence on **September 12, 2011 at 9:00 a.m.**

     **IT IS SO ORDERED.**

San Juan, Puerto Rico, June 16, 2011.


              <u>s/ FRANCISCO A. BESOSA</u>
              FRANCISCO A. BESOSA
              UNITED STATES DISTRICT JUDGE